1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE LIVINGSTON, | No. C-06-2389 MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NOVA WINES, INC.'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; VACATING HEARING** |
| v. | |
| KEYA MORGAN aka KEYARASH MAZHARI aka KEYA MAZHARI, et al., | |
| Defendants. | |
| _____/ | (Docket Nos. 167, 180) |

Before the Court is the motion for summary judgment or, in the alternative, summary adjudication, filed June 14, 2007 by defendant Nova Wines, Inc. ("Nova").  Plaintiff Pete Livingston ("Livingston") has filed opposition to the motion, as well as a cross-motion for summary judgment.  Nova has filed a reply in support of its own motion, as well as an opposition to Livingston's cross-motion.  Livingston has filed a reply in support of his cross-motion.  Having considered the papers filed in support of and in opposition to the motions, the Court finds the matters appropriate for decision without oral argument, see Civil L.R. 7-1(b), hereby VACATES the July 20, 2007 hearing, and rules as follows.

**BACKGROUND**

In the Second Amended Complaint, Livingston alleges he owns the copyright to a series of photographs of Marilyn Monroe ("Monroe photographs"), alleged to have been

1   taken by his father, Carl Perutz ("Perutz"), in the late 1950s.  (See Second Amended

2   Complaint ("SAC") ¶¶ 1, 7-8.)  Livingston alleges he "is the sole heir of his father's

3   photographic work."  (See id. ¶¶ 1, 8.)  On August 3, 2004, Livington registered the

4   copyright in the Monroe photographs with the Library of Congress Copyright Office, and

5   identified the photographs therein by number as perutz-001 through perutz-81.  (See id.

6   ¶ 10; see also Ioannou Decl., filed Feb. 7, 2007, Ex. 14.)

7       Livingston asserts a claim for copyright infringement against Nova, alleging Nova

8   wrongfully created a derivative work from one of the Monroe photographs, without

9   Livingston's authorization, for use on a label for Nova's 2002 vintage Marilyn Merlot wine.

10  (See id. ¶ 13.)  The parties refer to the photograph Nova is alleged to have infringed as

11  perutz-003, the identification number set forth in Livingston's copyright registration for such

12  photograph.

13      Nova and Livingston have filed cross-motions for summary judgment of the single

14  claim for copyright infringement asserted against Nova.[1]

15                              **LEGAL STANDARD**

16      Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as

17  to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions,

18  answers to interrogatories, and admissions on file, together with the affidavits, if any, show

19  that there is no genuine issue as to any material fact and that the moving party is entitled to

20  judgment as a matter of law."  See Fed. R. Civ. P. 56(b), (c).  Material facts are those that

21  may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

22  248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a

23  reasonable jury could return a verdict for the nonmoving party."  See id.  The Court may not

24  weigh the evidence.  See id. at 255.  Rather, the nonmoving party's evidence must be

25  believed and "all justifiable inferences must be drawn in [the nonmovant's] favor."  See

26  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)

27  _____

28      [1] Livingston also asserts claims against defendant Keya Morgan ("Morgan"), which
    claims are not at issue in the instant motion.

                                        2

1  (en banc) (citing <u>Liberty Lobby</u>, 477 U.S. at 255).

2         The moving party bears the initial responsibility of informing the district court of the

3  basis for its motion and identifying those portions of the pleadings, depositions,

4  interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the

5  absence of a genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

6  323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving

7  party's burden is discharged when it shows the court there is an absence of evidence to

8  support the nonmoving party's case.  <u>See</u> <u>id</u>. at 325.

9         A party opposing a properly supported motion for summary judgment "may not rest

10 upon the mere allegations or denials of [that] party's pleading, but . . .  must set forth

11 specific facts showing that there is a genuine issue for trial."  <u>See</u> Fed. R. Civ. P. 56(e); <u>see</u>

12 <u>also</u> <u>Liberty Lobby</u>, 477 U.S. at 250.  The opposing party need not show the issue will be

13 resolved conclusively in its favor.  <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 248-49.  All that is

14 necessary is submission of sufficient evidence to create a material factual dispute, thereby

15 requiring a jury or judge to resolve the parties' differing versions at trial.  <u>See</u> <u>id</u>.

16                                          **DISCUSSION**

17         **A.  "Work for Hire"**

18         Nova's first argument in support of summary judgment is that the Monroe

19 photograph at issue, perutz-003, was a "work for hire" within the meaning of the Copyright

20 Act of 1909 ("1909 Act").  In particular, Nova contends that Hearst Publications ("Hearst")

21 hired Perutz to create perutz-003 and that, consequently, the copyright owner is Hearst, not

22 Livingston.[2]  Accordingly, Nova argues, Livingston lacks standing to assert the instant

23 action for copyright infringement.

24         Because perutz-003 was created prior to the January 1, 1978 effective date of the

25 _____

26         [2] In its prior motion for summary judgment, Nova argued that Takashi Oyama
   ("Oyama"), not Perutz, was the photographer of the Monroe photographs.  The Court
27 denied Nova's previous motion for summary judgment on the issue of Oyama's authorship
   of the Monroe photographs and found Livingston had raised a triable issue as to whether
28 Perutz was the author.  (<u>See</u> Order Denying Nova Wines, Inc.'s Motion for Summary
   Judgment, filed March 14, 2007, at 2:1-6.)

Copyright Act of 1976, the copyright in such photograph is governed by the 1909 Act.  See Twentieth Century Fox Film Corp. v. Entertainment Distributing, 429 F.3d 869, 876 (9th Cir. 2005) (considering under 1909 Act issue of whether book was "work for hire" because book "was published before the January 1, 1978 effective date of the 1976 Copyright Act"); Playboy Enterprises, Inc. v. Dumas, 53 F.3d 549, 553 (2d Cir. 1995) (applying 1909 Act to paintings created before January 1, 1978 and applying 1976 Act to paintings created after that date).

The 1909 Act "provides for copyright protection for an 'author,'" see Murray v. Gelderman, 566 F.2d 1307, 1309 (5th Cir. 1978) (quoting former 17 U.S.C. § 4), and defines the term "author" to "'include an employer in the case of works for hire,'" see Twentieth Century Fox, 429 F.3d at 877 (quoting former 17 U.S.C. § 26).  Thus, under the 1909 Act, where "'one person engages another, whether as employee or as an independent contractor, to produce a work of an artistic nature, . . . in the absence of an express contractual reservation of the copyright in the artist, the presumption arises that the mutual intent of the parties is that the title to the copyright shall be in the person at whose instance and expense the work is done.'"  See id. (quoting Lin-Brook Builders Hardware v. Gertler, 352 F.2d 298, 300 (9th Cir. 1965)).

The test for whether a work was created at the "instance" of another is "an inquiry into whether the motivating factor in producing the work was the [engaging party] who induced the creation," and "is shaped in part by the degree to which the [engaging party] had the right to control or supervise the artist's work."  See id. at 879 (internal quotations and citations omitted).  "[C]omplete control over the author's work is not necessary."  Id. at 880.  Rather, "the issue is one of degree where the greater the degree of supervisory power and control [the engaging] party has over an independent contractor, the more likely it is that the work was created at the [engaging] party's instance."  See id. at 880.  The requirement that a work be made at the "expense" of another is "met where a hiring party simply pays an independent contractor a sum certain for his or her work."  See Playboy Enterprises, Inc. v. Dumas, 53 F.3d at 555.  "In contrast, where the creator of a work

4

1   receives royalties as payment, that method of payment generally weighs against finding a

2   work-for-hire relationship."  See id.

3          The issue of whether a work is a "work for hire" is an affirmative defense to a claim

4   of copyright infringement.  See Dolman v. Agee, 157 F.3d 708, 712 (9th Cir. 1998).  Thus,

5   the defendant has the "initial burden of production on this issue," and must "present some

6   credible evidence" that the creation of the work at issue "was done at the 'instance and

7   expense'" of a third party.  See id.  Where the defendant meets such burden, there arises a

8   "legal presumption that it is a work-for-hire – that the copyright lies ab initio with the

9   [engaging] party."  See Twentieth Century Fox, 429 F.3d at 881.  The "presumption can be

10  overcome by evidence of an agreement by which the employee or independent contractor

11  retained the copyright in his work."  See id.  "The employee-plaintiff bears the burden of

12  proving by a preponderance of the evidence that such a contrary agreement was reached."

13  Dolman v. Agee, 157 F.3d at 712.

14         In support of its contention that Perutz created perutz-003 at the "instance and

15  expense" of Hearst, Nova relies on discovery responses by Livingston and the deposition

16  testimony of Livingston and of Perutz's friend, Ronald W. Butler ("Butler").

17         Specifically, Nova, on October 27, 2006, served interrogatories on Livingston and

18  asked Livingston therein to "[d]escribe with particularity all instances in which Carl Perutz

19  took photographs of Marilyn Monroe, including, the date, place, and the IDENTITY of any

20  party requesting that said photographs be taken."  (See Vasquez Decl. ¶ 8 and Ex. 7,

21  Special Interrogatory No. 11.)  On November 24, 2006, Livingston responded:

22             At least once in 1958.  The photos appear to have been created in response
              to Hearst commissioning an article for the April 6, 1958 issue of American
23             Weekly magazine.  Perutz [t]ook photographs of Marilyn Monroe, from which
              Jon Whitcomb created a derivative work [w]hich was published in said article.
24
25  (See id. ¶ 8 and Ex. 7, Response to Special Interrogatory No. 11.)  In that regard, Nova

26  submits photocopies of pages from the April 6, 1958 issue of American Weekly, containing

27  an article titled "Milady's Easter Bonnet," which article includes "paintings by Jon

28  Whitcomb" of six celebrities wearing hats, including a painting of Marilyn Monroe

1   ("Monroe").  (<u>See</u> <u>id</u>. ¶ 12 and Ex. 8.)

2          At his deposition, Livingston testified that the painting of Monroe in the April 6, 1958

3   issue of American Weekly "appears to be a derivative work created from perutz-002."  (<u>See</u>

4   <u>id</u>. Ex. 5 (Livingston Dep.) at 29:25-30:6.)  Livingston further testified that his

5   "understanding is that Carl Perutz was hired by a Hearst publication to create a series of

6   photos of Marilyn Monroe to provide to Jon Whitcomb so that he could create a derivative

7   work for this 'American Weekly' article."  (<u>See</u> <u>id</u>. at 31:20-24.)  Livingston explained that

8   his understanding is based on his recollection of a July 1980 article in Playboy magazine.

9   (<u>See</u> <u>id</u>. at 31:7-13 ("My understanding is from the Playboy article of 1980.  I think it was

10  the July 1980 Playboy[.]")

11         Butler testified at his deposition that Perutz created the Monroe photographs "for a

12  magazine who wanted photographs of famous people wearing Easter hats," and that

13  Perutz's "assignment was Marilyn."  (<u>See</u> <u>id</u>. Ex. 6 (Butler Dep.) at 45:18-22.)  When asked

14  whether "that shoot was specifically for the publication of [that] article," Butler responded,

15  "Yes."  (<u>See</u> <u>id</u>. at 46:23-25.)  Butler further testified, "I think the pictures were taken and

16  then given to the artist, Jon Whitcomb, who was a famous illustrator of the day," and,

17  specifically, that Perutz "gave them to the magazine and the magazine sent them to

18  Whitcomb."  (<u>See</u> <u>id</u>. at 47:11-13, 48:5-12.)  Nothing in Butler's testimony suggests he has

19  personal knowledge of the arrangement, if any, between Perutz and Hearst, and his

20  frequent references to a 1980 Playboy article suggest that whatever knowledge he has

21  about the matter comes from the same Playboy article to which Livingston refers.  (<u>See</u> <u>id</u>.

22  at 46:1-6, 47:1-4, 47:20-23, 48:16-25.)

23         No Playboy article from July 1980 has been submitted to the Court.  In connection

24  with Nova's prior motion for summary judgment, however, the parties submitted a very brief

25  article from the June 1980 Playboy, in which article Jon Whitcomb is quoted as follows:

26  "For <u>The</u> <u>American</u> <u>Weekly</u> issue of April 6, 1958, Hearst needed an Easter hat feature and

27  asked me to paint six ladies for it.  As usual, overnight.  A photographer named Carl Perutz

28  or some such Nom de Nikon handled Marilyn."  (<u>See</u> Simpich Decl., filed Feb. 23, 2007, Ex.

1    8.)  Said article, however, from which Livingston's and Butler's testimony apparently

2    derives, does not state that Hearst commissioned the Monroe photographs.  Rather,

3    Whitcomb states therein that Hearst asked Whitcomb to "paint six ladies" for an Easter Hat

4    feature for the April 6, 1958 issue of American Weekly, and that Perutz "handled Marilyn."

5    (See Simpich Decl., filed Feb. 23, 2007, Ex. 8.)

6          Any inference drawn from such statement that Hearst commissioned Perutz to take

7    photographs of Monroe would be purely speculative; nothing in Whitcomb's statement even

8    suggests that Perutz had taken the Monroe photographs at Hearst's instance.  Moreover,

9    Nova has submitted no evidence that Hearst had any "right to control or supervise the

10   artist's work," see Twentieth Century Fox, 429 F.3d at 879, or that the Monroe photographs

11   were taken at Hearst's expense.  Indeed, as Livingston points out, Nova has submitted no

12   evidence "as to what compensation arrangement existed between Perutz and Hearst

13   Publications, nor has [Nova] produced any evidence of payment."  (See Livingston Reply at

14   3.)

15         Accordingly, Nova has not met its burden of producing "credible evidence" that

16   perutz-003 was created by Perutz at the "instance and expense" of Hearst.  Consequently,

17   the Court will deny Nova's motion for summary judgment, and grant Livingston's motion for

18   summary judgment, on the issue of whether perutz-003 is a "work for hire" pursuant to the

19   Copyright Act of 1909.

20         **B.  Availability of Statutory Damages or Attorneys' Fees**

21         Nova next argues that even if perutz-003 is not a work for hire, Livingston cannot

22   recover statutory damages or attorneys' fees because the first act of alleged infringement

23   by Nova occurred prior to the registration of perutz-003.

24         "[A]n infringer of copyright is liable for either – (1) the copyright owner's actual

25   damages and any additional profits of the infringer . . . ; or (2) statutory damages," at the

26   copyright owner's election.  See 17 U.S.C. 504(a), (c)(1).  In addition, the court may "award

27   a reasonable attorney's fee to the prevailing party as part of the costs."  See 17 U.S.C.

28   § 505.  Subject to exceptions not relevant here, however, "no award of statutory damages

                                             7

1   or of attorney's fees . . . shall be made for . . .  any infringement of copyright in an

2   unpublished work commenced before the effective date of its registration."  See 17 U.S.C.

3   § 412.  The purpose of § 412 is to encourage copyright owners "to register their works early

4   and to give potential infringers an incentive to check the Copyright Office's national

5   database of records."  See Gloster v. Relios, Inc., 2006 WL 1804572 at *1 (E.D. Pa. June

6   28, 2006); see also 17 U.S.C. § 412, Historical and Statutory Notes (observing § 412 is

7   intended to "induce[ ] in some practical way" copyright registration and that copyright

8   holders "should not be given special statutory remedies unless the owner has, by

9   registration, made a public record of his copyright claim").

10       Here, the effective date of Livingston's certificate of registration of the copyright in

11   the Monroe photographs, including perutz-003, is August 3, 2004.  (See Simpich Decl. Ex.

12   8.)  Livingston attests: "None of the images which I filed for copyright protection with the

13   application for registration were published prior to my registration."[3]  (See Vasquez Decl.

14   Ex. 4 (Livingston Decl. dated March 8, 2007) ¶ 3.)

15       Nova submits evidence, however, that any copyright infringement of perutz-003 by

16   Nova commenced prior to the effective date of Livingston's copyright registration.  In

17   particular, Nova's General Manager, Donna Holder ("Holder"), attests that Nova began

18   preparing its 2002 Marilyn Merlot label in the second half of 2003, that it submitted the label

19   on December 1, 2003 to the Department of the Treasury, Alcohol and Tobacco Tax and

20   Trade Bureau for certification, and that Nova approved the final version of the label in

21   January 2004.  (See Holder Decl. ¶¶ 2-8 and Exs. 9-13.)  Holder further attests that Nova's

22   2002 vintage Marilyn Merlot wine was bottled and labeled on January 29, 2004, and that

23   the first sale of the wine was March 31, 2004.  (See Holder Decl. ¶¶ 9-10 and Ex. 14.)  As

24   all of such acts occurred prior to the August 3, 2004 effective date of Livingston's copyright

25   registration, Nova argues, Livingston is barred by § 412 from obtaining an award of

26   

27       [3] For purposes of § 412, a work is published if it is distributed to the public or put on
    public display with the authorization of the copyright holder.  See Zito v. Steeplechase
28   Films, Inc., 267 F. Supp. 1022, 1026 (N.D. Cal. 2003).

1    statutory damages or attorney's fees, even with respect to sales of 2002 Marilyn Merlot that

2    occurred after the August 3, 2004 effective date of Livingston's copyright registration.[4]

3         Livingston argues that Nova has not demonstrated that infringement commenced

4    prior to registration because Nova's first sale of 2002 Marilyn Merlot was shipped to Japan,

5    and any infringing act in Japan is not a violation of United States copyright law.  Livingston

6    points out that the Ninth Circuit has held that "the United States copyright laws do not reach

7    acts of infringement that take place entirely abroad."  See Subafilms, Ltd. v. MGM-Pathe

8    Communications Co., 24 F.3d 1088, 1098 (9th Cir. 1994).  As Nova points out, however,

9    the infringing conduct begins when the copyrighted work is first copied, not when it is first

10   sold.  See, e.g., Twentieth Century Fox, 429 F.3d at 976 ("To demonstrate copyright

11   infringement, the plaintiff must prove ownership of a valid copyright and copying of

12   constituent elements of the work that are original"); CD Law Inc. v. Lawworks, Inc., 1994

13   WL 840929 at *6 (W.D. Wash. 1994) (holding infringement commenced for purposes of

14   § 412 when product was first copied by defendant; finding plaintiff not entitled to statutory

15   damages and fees for post-registration sales).  As noted above, Nova has submitted

16   evidence that the label design was finished by January 2004,[5] and, thus, that any copying

17   of perutz-003 occurred prior to that date.[6]

18

---

19   [4] "Every court to consider this question has come to the same conclusion; namely,
20   that infringement 'commences' for the purposes of § 412 when the first act in a series of
     acts constituting continuing infringement occurs."  See Johnson v.Jones, 149 F.3d 494, 506
     (6th Cir. 1998) (rejecting argument that "infringement is 'commenced' for the purposes of §
21   412 each time an infringer commits another in an ongoing series of infringing acts"); see
     also Singh v. Famous Overseas, Inc., 680 F. Supp. 533 (E.D.N.Y. 1988) (holding statutory
22   damages and attorney's fees unavailable where defendant began selling infringing item
     prior to registration even though sales continued to be made after registration).
23

24   [5] Nova also argues that it made sales of 2002 Marilyn Merlot domestically prior to
     the effective date of Livingston's copyright registration.  The evidence cited by Nova does
     not include shipping addresses, however, (see Vasquez Decl. Ex. 16), and, thus, provides
25   no support for its contention that such shipments were sent to addresses within the United
     States.
26

27   [6] Livingston objects to Nova's evidence with respect to the preparation of the 2002
     Marilyn Merlot label on two grounds.  First, Livingston objects that the evidence was not
28   produced in Nova's initial disclosures or otherwise in response to Livingston's discovery
     requests.  Such objection is overruled.  Nova expressly declined to produce documents

9

1    Accordingly, Nova's motion for summary judgment on the issue of statutory

2    damages and attorneys' fees will be granted, and Livingston's cross-motion for summary

3    judgment on such issue will be denied.

4    **C. Infringement**

5    Livingston seeks summary judgment on the issue of whether Nova has infringed

6    Livingston's copyright in perutz-003.[7]  As noted, Livingston has the burden of

7    demonstrating infringement.  See Twentieth Century Fox, 429 F.3d at 876.  Because

8    Livingston "bears the burden of proof at trial" on the issue of infringement, he can prevail on

9    summary judgment only if he first "come[s] forward with evidence which would entitle him to

10   a directed verdict if the evidence went uncontroverted at trial," and "establish[es] the

11   absence of a genuine issue of fact on each issue material to his [claim]."  See Houghton v.

12   South, 965 F.2d 1532, 1536-37 (9th Cir. 1992) (citations omitted).  To demonstrate

13   copyright infringement, Livingston "must prove ownership of a valid copyright and copying

14   of constituent elements of the work that are original."[8]  See Twentieth Century Fox, 429

15   F.3d at 876.

16   **1. Ownership**

17   Livingston's certificate of copyright registration is prima facie evidence of the validity

18   of his copyright in the Monroe photographs, including perutz-003, and of the facts stated in

19   the certificate of registration.  See Apple Computer v. Formula Int'l Inc., 725 F.2d 521, 523

20

21   relating to its use of perutz-003 until the parties had entered into a protective order; a
     stipulated protective order was not entered until June 13, 2007.  Although Nova filed the
22   instant motion the following day, Livingston has not demonstrated that he suffered any
     prejudice therefrom and has not sought a Rule 56(f) continuance.  Livingston next contends
23   that Holder's declaration fails to lay an adequate foundation for admission of such evidence
     as business records.  Such objection also is overruled.  See Fed. R. Ev. 803(6).
24

25   [7] Nova has not moved for summary judgment of non-infringement.

26   [8] "[A]lmost any photograph may claim the necessary originality to support a copyright
     merely by virtue of the photographer['s] personal choice of subject matter, angle of
     photograph, lighting, and determination of the precise time when the photograph is to be
27   taken."  See Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000) (internal
     quotation and citation omitted) (finding commercial photograph of vodka bottle sufficiently
28   creative to merit copyright protection).

1    (9th Cir. 1984) (citing 17 U.S.C. § 410(c)); see also 17 U.S.C. § 410(c).  Nova has "the

2    burden of overcoming the presumption of validity" established by Livingston's certificate of

3    copyright registration.  See Apple Computer, 725 F.2d at 523.

4        Nova, in its opposition, relies entirely on the argument that Livingston is not the

5    copyright holder because perutz-003 was a work for hire created by Perutz for Hearst.  As

6    discussed above, Nova has failed to meet its initial burden on that issue.

7        Accordingly, Nova has not raised a triable issue as to Livingston's ownership of the

8    copyright in the Monroe photographs, and the Court will grant Livingston's motion for

9    summary judgment on the issue of ownership.

10        **2. Copying**

11        In order to prevail on his claim of infringement, Livingston must demonstrate not only

12    ownership of the copyright in perutz-003, but also Nova's "copying of constituent elements

13    of the work that are original."  See Twentieth Century Fox, 429 F.3d at 976.  In particular,

14    "[i]f the plaintiff copyright holder survives the first step, i.e., it establishes that it owns a valid

15    copyright, then the plaintiff must establish infringement by showing both access to its

16    copyrighted material on the part of the alleged infringer and substantial similarity between

17    the copyrighted work and the alleged infringing work."  See Lamps Plus, Inc. v. Seattle

18    Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).  In that regard, "[a] grant of

19    summary judgment for [the] plaintiff is proper" where the copyrighted and accused works

20    "are so overwhelmingly identical that the possibility of independent creation is precluded."

21    See Twentieth Century Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1330 (9th Cir. 1983).

22        As Livingston points out, Nova admitted in response to Livingston's requests for

23    admission that "it hired Susan Ortega to create an original rendition of Marilyn Monroe

24    wearing a hat and that she was given the photograph attached as an Exhibit to Plaintiff's

25    Second Amended Complaint, PERUTZ-003."  (See Simpich Decl. Ex. 9 (Nova's response

26    to Requests for Admission No. 6).)  Consequently, it is undisputed that Nova had access to

27    perutz-003.

28        Nova further admits that Ortega "create[d] an original rendering/image that was then

11

1  used to create a label for [Nova's] 2002 Marilyn Merlot wine bottles."  (See id. (Nova's

2  response to Requests for Admission No. 7).)  Nova did not admit or deny therein, however,

3  that the resulting label was "substantially similar" to perutz-003.

4        The Ninth Circuit applies a two-part test to determine substantial similarity.  See

5  Berkic v. Crichton, 761 F.2d 1289, 1291 (9th Cir. 1985).  "The first part, the 'extrinsic test,'

6  is used to determine whether two works are substantially similar in their 'general ideas.'"  Id.

7  at 1292.  "The extrinsic test compares the individual features of the works"; applying the

8  extrinsic test, "analytic dissection and expert testimony are appropriate."  See id. (internal

9  quotation and citation omitted).  "The second part of the substantial similarity inquiry, the

10  'intrinsic test,' is used to determine whether two works are substantially similar in their

11  'forms of expression.'"  Id.  "The intrinsic test is subjective; it depends solely on the

12  response of the ordinarily reasonable person," and, consequently, "expert testimony or the

13  comparison of individual features of the works is inappropriate."  See id.  "Rather, the trier

14  of fact ordinarily decides whether the 'total concept and feel' of the two works is

15  substantially similar."  Id.

16        Here, as noted, Nova concedes the 2002 Marilyn Merlot wine label designed by

17  Ortega was based on perutz-003.  Although Nova does not expressly concede that the

18  wine label and perutz-003 are substantially similar, it makes no argument that the two

19  works are not substantially similar.  Indeed, other than the wine label's omission of a rose

20  on Monroe's hat and what appears to be a corsage on the shoulder of her clothing, the two

21  works are identical.  The wine label and perutz-003 both feature the same depiction of

22  Monroe, in which she has the same facial expression, the same hairstyle, and is wearing

23  the same hat that obscures the same portion of her face, under the same lighting

24  conditions.  The overall concept and feel of the two works likewise is identical.  In short, no

25  reasonable trier of fact could find the two works are not substantially similar.

26        Accordingly, Livingston's motion for summary judgment on the issue of infringement

27  will be granted.

28                                    **CONCLUSION**

12

1        For the reasons set forth above, Nova's motion for summary judgment and

2  Livingston's cross-motion for summary judgment are hereby GRANTED in part and

3  DENIED in part, as follows:

4       1.  With respect to the issue of whether perutz-003 was a work for hire created by

5  Perutz for Hearst, Nova's motion is DENIED and Livingston's cross-motion is GRANTED.

6       2.  With respect to the issue of whether Livingston may recover statutory damages

7  and attorney's fees, Nova's motion is GRANTED and Livingston's cross-motion is DENIED.

8       3.  With respect to the issue of copyright infringement, Livingston's cross-motion is

9  GRANTED.

10      This order terminates Docket Nos. 167 and 180.

11     **IT IS SO ORDERED.**

12  Dated: July 25, 2007                       
MAXINE M. CHESNEY
United States District Judge